**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |
|---|---|
| In re:<br>ZETIA (EZETIMIBE) ANTITRUST<br>LITIGATION | MDL No. 2:18-md-2836 |
| THIS DOCUMENT RELATES TO:<br>ALL END PAYER CLASS ACTIONS | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION BY
DEFENDANTS MERCK & CO., INC.; MERCK SHARP & DOHME CORP.;
SCHERING-PLOUGH CORP.; SCHERING CORP.; MSP SINGAPORE CO. LLC;
GLENMARK PHARMACEUTICALS, LTD.; AND GLENMARK GENERICS INC.,
USA, TO DISMISS ALL CLAIMS ASSERTED BY END PAYER PLAINTIFFS**

End Payer Plaintiffs ("EPPs") have asserted dozens of separate state law claims for relief, each premised on the same allegedly anticompetitive conduct. All of those claims fail as a matter of law because EPPs have failed to allege "a large and unjustified payment" for the reasons set forth in Glenmark's reply in support of its motion to dismiss the Direct Purchaser Plaintiffs' Complaint, in which all Defendants have joined and which is incorporated here by reference. But even beyond that, EPPs are pursuing claims for which the named plaintiffs before this Court admittedly lack standing, and claims that are foreclosed by state precedent and have been repeatedly rejected by federal courts. In their Opposition, Plaintiffs stand by those claims even when the great weight of the case law, particularly from state courts interpreting their own laws, supports dismissal. EPPs even pursue multiple claims that some of them *expressly abandoned* during briefing on Merck's pre-consolidation motions to dismiss their individual complaints. EPPs' claims should be dismissed.

# I.   ARGUMENT

**A.   The Named Plaintiffs' Standing Must Be Determined at the Pleading Stage and Cannot Be Deferred to the Class Certification Stage.**

In response to Defendants' argument that EPPs lack Article III standing to raise claims under the laws of jurisdictions in which no EPP resides or has paid for Zetia®, EPPs urge this Court to conclude that Article III is satisfied by the mere *possibility* that if the proposed class is certified, it could contain unnamed class members with standing under those jurisdictions' laws. (*See* Opp. at 5.)   EPPs argue that the Court should permit their case to advance with claims they unquestionably lack standing to assert, on the theory that the Court can address this flaw at the class certification stage. (*See id*. at 5-6.)   EPPs' assertion that an "overwhelming number" of cases agree with their misreading of the relevant Supreme Court precedent is unfounded.   In fact, the better-reasoned cases, which faithfully follow that governing precedent, adhere to the well-established principle that a named plaintiff must have standing for each claim it asserts on behalf of the class.   Thus, EPPs can include in their Complaint *only* claims in jurisdictions in which an EPP resides or has paid for Zetia®.[1]   All other claims should be dismissed.   *See* Appendices.

## 1.   EPPs Ignore Supreme Court Precedent and Misread *Ortiz* and *Amchem*.

Article III's standing requirements apply to "each claim that a plaintiff seeks to press," *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014), and "a plaintiff must demonstrate standing separately for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).   A party generally must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."   *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

---

[1] Defendants reiterate that they presently seek to dismiss under Rule 12(b)(1) only claims under laws of jurisdictions in which no EPP named in the consolidated action has standing.   Any case sent back to the original district for trial should be limited to claims under the laws of jurisdictions where that EPP has standing.

EPPs appear to concede that they lack standing to bring many of the claims on their own behalf. (*See* Opp. at 3.)  Yet EPPs argue that establishing individual standing to sue for *one single claim* allows them to proceed with claims they lack standing to press simply because unnamed putative class members may have standing to press those claims.

This argument, however, directly conflicts with Supreme Court precedent requiring the named plaintiff in a putative class action to "allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."  *Warth*, 422 U.S. at 501.  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted).  Under *Lewis* and *Warth*, "[i]t is well-settled that a named plaintiff in a class action lawsuit is required to establish Article III standing."  *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 WL 5008090, at *7 (D.N.J. Oct. 20, 2011); *see also In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (observing that "no court explicitly states that *Warth* or *Lewis* has been overturned with respect to named plaintiffs' standing requirements," and concluding that "a standing analysis should not be deferred in this case").

To avoid this "well-settled" principle, EPPs attempt to draw from the Supreme Court's decisions in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), an exception that courts defer the standing inquiry until after class certification, which EPPs claim is "logically antecedent" to standing.  But that is a mischaracterization of *Amchem* and *Ortiz*.  Those cases address a *settlement-only* class where the named plaintiffs had standing, but sought to represent *unnamed* plaintiffs who arguably *lacked*

standing.  The Supreme Court held that the court should entertain the question of whether the settlement-only class should be certified *before* considering whether *unnamed plaintiffs* who were not injured may stay in the class.  *See, e.g.*, *In re Magnesium Oxide*, 2011 WL 5008090, at \*10; *In re Wellbutrin XL*, 260 F.R.D. at 154-56.  In that context, if the class is not certified, the Court need never resolve whether uninjured, unnamed putative class members have standing, because those individuals are never before the Court.  That is why the class certification issues were deemed "logically antecedent" to standing.  *Ortiz*, 527 U.S. at 831.  Here, in contrast, the claims for which the named plaintiffs lack standing are *already* in the case, and regardless of whether a class is certified, those claims require dismissal because it is the standing of *named plaintiffs* that matters, and the named plaintiffs lack standing to assert the claims.  Simply put, the named plaintiffs here cannot proceed with claims they lack standing to pursue in the hope that certain unnamed class members might one day be found to have the standing that the named plaintiffs undoubtedly lack.

     *Ortiz* and *Amchem* also were in a "unique posture" because they dealt with global settlement-only classes.  *In re Wellbutrin XL*, 260 F.R.D. at 152-56.  There, unlike here, no litigation would occur even if the class were certified.  The certification decisions in those cases were dispositive and ended the litigation, regardless of the outcome, eliminating a myriad of concerns that come with allowing a plaintiff to litigate in federal court when it lacks standing.

     Here, class certification is not outcome determinative; litigation will continue regardless of whether a class is certified.  If the Court addresses the merits of EPPs' claims *prior* to resolving standing, the Court will run afoul of the ordinary rule that an "Article III court must be sure of its own jurisdiction before getting to the merits" and assuming substantive-law-declaring power.  *Ortiz*, 527 U.S. at 831; *see also Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J.,

dissenting) ("Standing cannot be acquired through the back door of a class action.").  Accordingly, this Court should dismiss all claims that no named EPP possesses standing to pursue.

> **2.       The Majority of the Cases, and the Better Reasoned Ones, Decide Standing of the Named Plaintiffs at the Pleading Stage.**

Contrary to EPPs' contentions, the majority of cases have rejected EPPs' position and denied standing to plaintiffs who seek to bring claims on behalf of a class that those plaintiffs could not bring individually.[2]  This is compelled by the Fourth Circuit's holding that "[w]ithout a sufficient allegation of harm *to the named plaintiff in particular*, plaintiffs [in putative class actions] cannot meet their burden of establishing standing." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom. Beck v. Shulkin*, 137 S. Ct. 2307 (2017).  EPPs rely heavily on *United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Pfizer, Inc.*, No. 2:14-CV-395, Dkt. No. 99 (E.D. Va. Aug. 26, 2016) (Allen, J.), which applied *Ortiz* to defer consideration of standing

---

[2] *See, e.g.*, *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) (recognizing *Ortiz*'s limited holding); *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 301 F.3d 329, 333 n.2 (5th Cir. 2002) (noting limited exception in *Ortiz* and holding that Article III standing must be resolved before class certification issues); *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 726-27 (S.D.N.Y. 2017); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2012 WL 2917365, at *4-6 (E.D. Mich. July 17, 2012); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-59 (E.D. Mich. 2011) (similar); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010) (holding that because "there must be a named plaintiff with constitutional standing to assert each particular claim," "Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state"); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 920-23 (N.D. Ill. 2009) (holding that *Amchem* and *Ortiz* did not compel court to "postpone an inquiry into the threshold issue of justiciability"); *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 413-14, 418-19 (E.D. Pa. 2009) (holding that at pleading stage, prior to decision on class certification, named plaintiffs had standing only in states where they were located); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-27 (N.D. Cal. 2007) (similar); *Temple v. Circuit City Stores, Inc.*, Nos. 06 CV 5303 (JG), 06 CV 5304 (JG), 2007 WL 2790154, at *8 (E.D.N.Y. Sept. 25, 2007) (declining to postpone Article III standing issue in antitrust consumer class action and rejecting plaintiffs' attempt to analogize case to "the mass-tort global asbestos settlements at issue in *Amchem* and *Ortiz*"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007) (similar); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001) (same).

5

until class certification.  But that decision does not exempt EPPs from showing standing at the outset of the case for two reasons.  First, *Pfizer*'s holding was only that the plaintiffs had "standing to bring claims against Pfizer under the state antitrust and consumer protection laws of the states in which they reside and/or have purchased Celebrex."  *Id.* at *6-7.  Defendants, in contrast, object only to EPPs' standing under the laws of jurisdictions in which EPPs do *not* reside and have *not* purchased brand or generic Zetia®.  Second, the *Pfizer* decision did not address the fact that in *Ortiz*, only the standing of the *unnamed* plaintiffs was challenged, not the standing of named plaintiffs already before the Court.  That distinction renders *Ortiz* inapplicable.

To be sure, there are courts that have adopted EPPs' proposed approach.  But those courts misinterpret or misapply *Amchem* and *Ortiz*, or they otherwise misinterpret or misapply Supreme Court precedent; the cases that scrutinize, and are faithful to, the Supreme Court's precedent in this area consistently dismiss claims for which the named plaintiff lacks standing.  This Court should do the same.

**B.     Most of EPPs' Antitrust Claims Fail as a Matter of Law.**

**1.     *Illinois Brick* Bars EPPs' Claim Under Puerto Rico's Antitrust Provisions.**

Contrary to EPPs' arguments, the majority of courts have concluded that *Illinois Brick* applies in Puerto Rico and bars indirect purchaser claims.  EPPs cite *Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 61 (D.P.R. 2010), and its reliance on *Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.*, 137 D.P.R. 497 (1994), a decision that EPPs assert rejects limitations to private antitrust standing, including the *Illinois Brick* rule.  But *Pressure Vessels* does not address *Illinois Brick* or involve an indirect purchaser.  *See* 137 D.P.R. 497.  For that reason, subsequent cases have rejected the *Rivera-Muñiz* court's reasoning and have continued to hold that Puerto Rico follows *Illinois Brick*.  *See, e.g.*, *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 252 (D. Conn. 2015); *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health &*

6

*Welfare Fund v.Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1086-87 (N.D. Cal. 2014); *see also In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at \*15 (D. Mass. Sept. 16, 2015). Because *Pressure Vessels* does not address indirect-purchaser standing or *Illinois Brick*, it cannot stand as an authoritative statement repealing *Illinois Brick*. *Aggrenox*, 94 F. Supp. at 252; *United Food & Commercial Workers Local 1776*, 74 F. Supp. 3d at 1087. This Court should dismiss EPPs' antitrust claim under Puerto Rico law.

### 2. EPPs Did Not Adequately Allege Intrastate Effects or Conduct.

EPPs argue that they have adequately alleged intrastate effects to satisfy the antitrust statutes of jurisdictions requiring such allegations. (Opp. at 8-10.) Yet the Complaint provides only the bald legal conclusion that the challenged conduct "substantially affected intrastate, interstate and foreign commerce" (Compl. ¶ 306), "has substantial intrastate effects" (*id.* ¶ 307), and that exchanges occurred "in each state" (*id.* ¶ 308). The Opposition merely restates these conclusory allegations. But the antitrust statutes of D.C., Nevada, New York, North Carolina, South Dakota, Tennessee, West Virginia, and Wisconsin require *specific factual allegations of intrastate effects*—often requiring that those effects be "substantial"—and *Twombly* requires that EPPs plead more than simply the legal conclusion. Because EPPs make only conclusory, unsupported allegations of intrastate activities or effects, these antitrust claims must be dismissed.

- **District of Columbia**: *Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 740 F. Supp. 381, 396 (D. Md. 1990) (finding that plaintiff established a sufficient nexus to the District of Columbia because it asserted it did "much of its business" there, though most of the allegations referred to the "Washington, D.C. metropolitan area,"); s*ee also In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 1:14-MD-2508, 2015 WL 5166014, at \*24-26 (E.D. Tenn. June 24, 2015) (allegations did not "specifically identify certain details relating to the wrongful conduct or identify a connection between the District of Columbia and the wrongful conduct."); *In re Magnesium Oxide*, 2011 WL 5008090, at \*7, \*8 n.10 (dismissing claim alleging that prices "were raised, fixed, maintained, and stabilized at artificially high levels throughout the states," because they were "conclusory and fail[ed] to specifically tie their injuries . . . or its effects in those states" which included D.C.).

- **Nevada**: *In re Cast Iron Soil Pipe & Fittings*, 2015 WL 5166014, at *24-26 (plaintiffs did not "allege[] any facts specific to" several states including Nevada and similarly "fail[ed] to address how Defendants' actions have in any way affected intrastate commerce" there).

- **New York**: *Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp. 2d 51, 58, 60-61 & n.83 (S.D.N.Y. 2009) (dismissing claim because the alleged conduct "predominantly affects interstate commerce rather than New York commerce" and the allegations of a connection to New York were "conclusory"); *Two Queens, Inc. v. Scoza*, 296 A.D.2d 302, 304 (N.Y. App. Div. 2002) (New York's Donnelly Act applies only to conduct that has a "significant intrastate or local anticompetitive impact in violation of State antitrust law").

- **North Carolina**: *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 540 (E.D. Pa. 2010) (statute requires a "substantial in-state effect on North Carolina trade or commerce"; effects were sufficient where the defendant had two large development and production facilities in the state and sold large amounts of Flonase in the state and to the plaintiffs specifically).

- **South Dakota**: *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2018 WL 1135504, at *3-4 (E.D. Mich. Jan. 16, 2018) (statute requires that "some of the Defendants' conduct occurred, or the effects of which were felt, within the state") (internal quotation marks omitted).

- **Tennessee**: *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1159-60 (N.D. Cal. 2007) ("plaintiffs have failed to properly allege that defendants' anticompetitive conduct affects Tennessee trade or commerce to a substantial degree"); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005) (proper standard is "whether the alleged anticompetitive conduct affects Tennessee trade or commerce to a substantial degree"; defendant taking orders and making sales to Tennessee customers was not sufficient).

- **West Virginia**: *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014, at *25 (conclusory allegations of a West Virginia connection inadequate to plead that "wrongful conduct occurred . . . or was felt in West Virginia").

- **Wisconsin**: *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005) (requiring that "actionable conduct . . . [have] occurred within this state" or that the "conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state"); *see also In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1084 (D. Kan. 2009) (holding that the substantial effects test was not met where plaintiffs alleged that defendants shipped the drug at issue into the state at artificially high prices).

EPPs' argument is simply inapplicable in Mississippi, which requires allegations—absent

here—that *conduct* occurred in those states, not just effects:

- **Mississippi**: *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) (holding that "at least some conduct . . . performed wholly intrastate" must be alleged in order to come the within scope of Mississippi antitrust statute

8

(emphasis omitted)); *see also Infineon Techs. AG*, 531 F. Supp. 2d at 1157-59 (collecting and synthesizing cases).

**3.      EPPs Cannot Assert Violations of the Illinois Antitrust Act in a Class Action.**

EPPs argue that their antitrust claims under Illinois law survives because Illinois only prohibits indirect purchaser class actions in state court.  As an initial matter, EPPs' construction of Illinois law is highly illogical, perhaps explaining why no court has adopted it.  EPPs ask this Court to conclude that while *no* indirect purchaser suit may proceed under federal law, and while Illinois decided to adopt that prohibition with respect to class actions in its own courts, Illinois inexplicably wanted plaintiffs to be able to invoke the protection of Illinois law in federal court to seek the same relief that neither federal law nor state law allowed.  EPPs offer no basis for this peculiar approach.

EPPs also attempt to fashion a false distinction between substantive and procedural law under which Illinois's decision to permit indirect purchaser suits is substantive, but its prohibition on indirect purchaser class actions is procedural and inapplicable in federal law.  In other words, they seek to take *part* of Illinois law—the part that permits indirect purchaser suits—while rejecting the part that indicates that *this* indirect purchaser suit is banned.  Such attempts to defy Illinois's policy have been "repeatedly rejected" by the courts that have considered it.  *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016); *see also In re Lipitor Antitrust Litig.*, No. 3:12-cv-2389 (PGS)(DEA), 2018 WL 4006752, at *14-15 (D.N.J. Aug. 21, 2018) (stating that "a majority of courts have held that the Act is distinguishable from the New York law in *Shady Grove* and that it prohibits indirect purchaser class actions.").  "Under *Shady Grove*, state procedural rules control in federal court when they are 'part of a State's framework of substantive rights or remedies.'"  *In re Opana ER*, 162 F. Supp. 3d at 723 (quoting *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010) (Stevens, J., concurring)).  That is the case with Illinois's class action bar.

The Illinois Antitrust Act, which includes the class action bar, is not "a generally applicable section of that state's laws which merely governs procedure. Instead, it is contained in the state's antitrust statute, which confers substantive rights upon its citizens." *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408-09 (D. Mass. 2013). The vast majority of courts have followed this line of reasoning and concluded that this aspect of Illinois state law is substantive, rather than procedural. *See, e.g.*, *In re Lipitor*, 2018 WL 4006752, at \*14-15 (dismissing claim on this basis); *In re Opana ER*, 162 F. Supp. 3d at 722-23 (same); *In re Nexium*, 968 F. Supp. 2d at 408-09 (same); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415-16 (S.D.N.Y. 2011) (same); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 676-77 (E.D. Pa. 2010) (same). The statute also explicitly notes that the class action bar is designed to prevent duplicative recovery. *See* 740 Ill. Comp. Stat. Ann. 10/7 (2018) (directing courts to take steps to "avoid duplicate liability"). Accordingly, EPPs' claims under Illinois's antitrust act should be dismissed.

### 4.        Failure to Comply with State Notice Provisions Is a Basis for Dismissal.

EPPs argue that violations of pre-suit notice provisions in Arizona, Hawaii, Nevada, Rhode Island, and Utah do not require dismissal. (*See* Opp. at 12.) But "[t]he [notice] requirements are there, and it is not for plaintiffs or [a] federal court in another state to choose when the requirements might not be applicable." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2010 WL 11488485, at \*6 (N.D. Cal. Sept. 30, 2010). Many courts have dismissed indirect purchasers' claims for noncompliance with pre-suit notice requirements. *E.g.*, *In re Lipitor*, 2018 WL 4006752, at \*10-13; *In re Asacol Antitrust Litig.*, 15-CV-12730-DJC, 2016 WL 4083333, at \*14-15 (D. Mass. July 20, 2016); *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 232 (M.D. Pa. 2010); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009). Post-filing notice does not cure a failure to send pre-suit notice. These statutes require notice to be sent before filing to allow the state attorney general to preempt the lawsuit. *In re New*

10

*Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 183 (D. Me. 2004) (post-filing notice "flies in the face of both the statutory language and its policy").  Because each of the EPPs that gave notice did so after initially filing its complaint, that notice is insufficient and the claims must be dismissed.

EPPs also argue that, under *Shady Grove*, notice requirements do not apply in federal court. (Opp. at 12-13.)  But the Fourth Circuit has held that *Shady Grove* does not "excus[e] named class action plaintiffs from the threshold procedural requirements that they would face as individual litigants."  *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 442 F. App'x 2, 6 (4th Cir. 2011).  Even after *Shady Grove*, courts have dismissed complaints for failing to comply with notice provisions. *See, e.g.*, *In re Lipitor*, 2018 WL 4006752, at *10-13; *In re Asacol*, 2016 WL 4083333, at *15. Nor is it proper to read notice provisions as general procedural rules governed by *Shady Grove*. "On their face, the state laws address notice provisions for antitrust-related lawsuits" only.  *In re Asacol*, 2016 WL 4083333, at *15; *see also* Ariz. Rev. Stat. § 44-1415(A) (2018) (applying to "this article"); Haw. Rev. Stat. § 480-13.3 (2017) (applying to "this chapter").

### 5.    EPPs Do Not Have Standing Under Utah's Antitrust Statute.

EPPs also err in contending that they can satisfy Utah's residency requirement by relying on unnamed class members whom EPPs speculate "presumably" exist.  (*See* Opp. at 13.)  As discussed above, the named plaintiff—not absent putative class members—must have standing. *See supra* Section I.A.  Courts have routinely rejected EPPs' argument to the contrary.  *See, e.g.*, *In re Lipitor*, 2018 WL 4006752, at *16 (agreeing with "the majority of courts to address this issue" and dismissing claim "because there must be at least one named plaintiff who is a Utah citizen or resident"); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759-60 (E.D. Pa. 2014) (same); *In re Aggrenox*, 94 F. Supp. 3d at 252 (same).

**6.** **EPPs Cannot Seek Damages Under California Law.**

In their Opposition, EPPs disavow their explicit request for damages under Cal. Bus. and Prof. Code § 17200 and essentially amend their Complaint to seek restitution instead. EPPs' change of course is no surprise given that "it is well established that individuals may not recover damages" under § 17200. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003); *see also AngioScore, Inc. v. TriReme Med.*, LLC, 70 F. Supp. 3d 951, 963 (N.D. Cal. 2014) (dismissing a claim for damages brought under § 17200). But EPPs did not seek restitution in the Complaint, which limited the request for relief under this statute to "damages and multiple damages." (Compl. ¶¶ 347(c), 349.) Because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," EPPs' claim must be dismissed. *James v. Bailey*, No. 3:15CV519, 2017 WL 193494, at \*7 n.7 (E.D. Va. Jan. 17, 2017).

**C.** **Most of EPPs' Consumer Protection Claims Fail.**

**1.** **EPPs' Illinois and Missouri Claims Should be Dismissed.**

EPPs' Illinois and Missouri claims impermissibly attempt to circumvent *Illinois Brick* and should be dismissed. Both states' legislatures have limited (or, in Missouri, eliminated) the ability of indirect purchasers to sue for damages under the states' antitrust statutes. EPPs misapprehend Defendants' argument regarding Illinois and support their claim by noting that Illinois's consumer protection statute does not preclude class actions. Defendants do not seek dismissal because the statute contains such a limitation, but because allowing an antitrust-based class action would circumvent the antitrust statute's prohibition on class actions. That is why numerous courts have dismissed analogous claims. *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,* 64 F. Supp. 3d 665, 700 (E.D. Pa. 2014); *In re Flonase*, 692 F. Supp. 2d at 539. And the Missouri Supreme Court's decision in *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007), is distinguishable because it "did not consider facts in the antitrust context" and "allowing

12

a claim under Missouri's consumer protection law would provide an end-run around the state's prohibition of antitrust claims by indirect purchasers." *In re Suboxone*, 64 F. Supp. 3d at 702.

> **2.  EPPs Cannot Recover Under Consumer Protection Statutes That Do Not Encompass Alleged Antitrust Violations or Require Deception or Reliance.**

Contrary to EPPs' arguments, stating a claim under the consumer protection laws of Arizona, Arkansas, the District of Columbia, Idaho, Maine, Michigan, Minnesota, New York, Rhode Island, South Dakota, and Vermont requires EPPs to plausibly allege consumer-oriented deceptive conduct; mere anticompetitive conduct is insufficient:

- **Arizona**: EPPs clarify that their claim arises only under amended Ariz. Code § 44-1522(A)'s prohibition on "unfair" acts or practices. But courts apply the same test to *all* claims arising under this statute and require a showing of "a false promise or misrepresentation made in connection with the sale or advertisement" of a good and consequent proximate injury from the misrepresentation. *See, e.g.*, *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 953 (Ariz. 2016); *Thomas v. Ally Bank*, No. 1 CA-CV 17-0066, 2017 WL 6616620, at *2 (Ariz. Ct. App. Dec. 28, 2017). EPPs point to no case in which a court declined to apply this same standard to claims alleging "unfair" acts or practices. Because no injury caused by a misrepresentation is alleged, this claim fails.

- **Arkansas**: EPPs fail to address the statutory language explicitly requiring reliance as part of a plaintiff's case. Ark. Code Ann. § 4-88-113(f)(1)(A) (2018) ("A person who suffers an actual financial loss as a result of *his or her reliance* on the use of a practice declared unlawful" by the Act. (emphasis added)); *see also Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658, 662-63 (8th Cir. 2018) (affirming dismissal for failure to allege reliance). EPPs similarly ignore that the Eighth Circuit has held that the statute's provisions "must be interpreted in light of the enumerated conduct, such that it only serves to prohibit other instances of 'false representation, fraud, or the improper use of economic leverage.'" *In re Broiler Chicken Antitrust Litig.*, 209 F. Supp. 3d 772, 818 (N.D. Ill. 2017) (citation omitted) (collecting cases).

- **District of Columbia**: EPPs misconstrue *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003), where the court dismissed plaintiffs' consumer protection claim based on defendants' allegedly false and deceptive advertising. That *Williams* dismissed the claim *even though it alleged deceptive conduct* because the plaintiffs were not themselves deceived confirms that EPPs' claim should be dismissed here, where there is no allegation that the challenged conduct was deceptive at all.

- **Idaho**: EPPs rely on the fact that Idaho's statute contains an FTC Act harmonization provision. But that does not eliminate the need for deceptive conduct, as evidenced by the decisions dismissing similar claims under Idaho law because plaintiffs made no allegations

of consumer-directed deceptive conduct. *See In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1168 (N.D. Cal. 2015) (dismissing claim due to lack of allegations of deceptive conduct aimed at consumers); *Sheet Metal Workers*, 737 F. Supp. 2d at 411 (same).

- **Maine**: Courts interpreting Maine law have required plaintiffs to plead allegations of consumer-directed deception or inducement, neither of which EPPs have done. *See In re TFT-LCD*, 586 F. Supp. 2d at 1126-27 (citing *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792 (Me. 1998)); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1031 (N.D. Cal. 2007).

- **Michigan**: Defendants do not contend that Michigan's statute can *never* reach anticompetitive conduct, only that plaintiffs must plead consumer-directed deception, which EPPs have not done here. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1076-77 (S.D. Cal. 2017); *Sheet Metal Workers*, 737 F. Supp. 2d at 413; *cf. In re Suboxone*, 64 F. Supp. 3d at 701 (noting that "this statute does require intent to deceive" and allowing claim because "the End Payors' complaint pleads with particularity that Reckitt employed fraudulent and deceptive means with the intent to deceive").

- **Minnesota**: EPPs argue that the statute does not require reliance on the defendant's conduct. (Opp. at 17). But they ignore the cases requiring that the complained-of conduct be *deceptive*, and EPPs make no such allegations. *See, e.g.*, *In re Niaspan*, 42 F. Supp. 3d at 760; *In re New Motor Vehicles*, 350 F. Supp. 2d at 189-90.

- **New York**: EPPs rely on allegations of mere anticompetitive conduct, but "anticompetitive conduct that is not premised on consumer deception," like that alleged here, "is not within the ambit of [New York's consumer protection] statute." *In re Digital Music*, 812 F. Supp. 2d at 410 (internal quotation marks omitted) (dismissing claim); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 666 (same); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline*, PLC, 263 F.R.D. 205, 214 (E.D. Pa. 2009) (same).

- **Rhode Island**: EPPs cite *Ames v. Oceanside Welding & Towing Inc.*, 767 A.2d 677, 681 (R.I. 2001), for the proposition that the consumer protection statute's prohibition on "unfair" practices includes statutory violations. But post-*Ames* courts have concluded that Rhode Island's statute does not reach non-deceptive conduct. *See In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009) (noting that the statute "requires that defendants' conduct reasonably intended to confuse and mislead the general public into purchasing defendants' product when the actual intent was to buy someone else's product") (citing *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1353-54 (R.I. 1997)); *In re Flash Memory*, 643 F. Supp. 2d at 1161 (discussing *Ames* and nonetheless dismissing price-fixing claim as not within the ambit of Rhode Island's consumer protection statute); *In re Graphics Processing Units*, 527 F. Supp. 2d at 1030.

- **South Dakota**: EPPs' authority proves Defendants' point by requiring allegations of deception to state a claim. *See In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y. 2012) (declining to dismiss claim "[b]ecause Defendants made misrepresentations to the PTO and FDA"). EPPs cite *DDAVP* for the proposition

14

that they "were impacted as a result" of Defendants' alleged conduct, but EPPs omit the court's reasoning: "Plaintiffs were 'adversely affected' *by the fraud* committed by Defendants within the meaning of the SDDTPA *when they relied on such representations* and paid supra-competitive prices for the drug." *Id.* (emphasis added); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1155 (E.D. Mo. 2007), *clarified and amended on other grounds*, 4:05CV01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007); *In re New Motor Vehicles*, 350 F. Supp. 2d at 202-03.

- **Vermont**: EPPs cite no case law relying on Vermont's FTC Act harmonization provision to allow analogous claims, and EPPs' effort to the contrary should be rejected. So should EPPs' reliance on Vermont precedent that merely allowed indirect purchasers to sue. As explained in the Motion, the Court should follow other courts that have dismissed analogous claims. *See, e.g.*, *In re Propranolol*, 249 F. Supp. 3d at 729.

Nor do EPPs' arguments provide a basis for the Court to disregard the authorities that have

held that the consumer protection statutes of Idaho, Illinois, Kansas, Oregon, Tennessee, Utah, and

West Virginia do not encompass claims based on purely anticompetitive conduct.

- **Idaho**: EPPs simply analogize Idaho's statute to the FTC Act and fail to address "dispositive" Idaho Supreme Court precedent that holds that the statute does not encompass allegations of antitrust price-fixing. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig*, 516 F. Supp. 2d 1072, 1110 (N.D. Cal. 2007) (citing *State ex rel. Wasden v. Daicel Chem. Indus.*, 106 P.3d 428 (Idaho 2005)).

- **Illinois**: EPPs attempt to distinguish *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986 (Ill. 1990), but in doing so neglect to address published Illinois appeals court precedent interpreting *Laughlin* as prohibiting plaintiffs from asserting antitrust claims under Illinois's consumer protection statute. *See Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 229-30 (Ill. App. Ct. 1996). *Laughlin* itself was clear: "There is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust mechanism. The language of the Act shows that its reach was to be limited to conduct that defrauds or deceives consumers or others." 550 N.E.2d at 993; *see also In re Lipitor*, 2018 WL 4006752, at \*18 (relying on *Laughlin* and *Gaebler* in dismissing claim).

- **Kansas**: EPPs invoke the statute's direction that it be "liberally construed," but "[d]espite the KCPA's seemingly broad language, the Supreme Court of Kansas has distinguished between consumer harms redressable thereunder and pricing harms governed by the Kansas antitrust statute." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (citing *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513, 757 P.2d 304, 306–08 (Kan. 1988)). EPPs' claims premised on purely anticompetitive conduct thus do not state a claim under Kansas's consumer protection statute. *See id.*; *Schoenbaum*, 517 F. Supp. 2d at 1153; *cf. In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5094289, at \*9 (N.D. Cal. Dec. 8, 2010) (granting summary judgment to defendants on antitrust-based consumer protection claim).

15

- **Oregon**: Rather than address the cases holding that Oregon's statute does not reach purely anticompetitive conduct, EPPs eschew them because they "predate" the ones EPPs cite; yet EPPs do not say why this matters, and their cases are distinguishable because both allowed claims to proceed only because the plaintiffs alleged affirmative misrepresentations relating to the challenged conduct, allegations EPPs do not make here. *See In re Liquid Aluminum Sulfate Antitrust Litig.*, No. CV 16-MD-2687 (JLL), 2017 WL 3131977, at *27 (D.N.J. July 20, 2017); *In re Packaged Seafood*, 242 F. Supp. 3d at 1084.

- **Tennessee**: EPPs assert a "split" as to whether Tennessee's statute encompasses purely anticompetitive conduct. (Opp. at 18.) In support they cite a single case predating the most recent pronouncements by Tennessee's appellate courts that purely anticompetitive conduct does not fall within the statute's scope. *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 754-55 (Tenn. Ct. App. 2006); *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9CV, 2003 WL 21780975, at *33 (Tenn. Ct. App. July 31, 2003). The *Bennett* court distinguished EPPs' authority, noting that it "did not investigate the federal courts' interpretation of 'unfair or deceptive acts or practices' as required by [Tennessee's statute]." *Bennett*, 198 S.W.3d at 754. Moreover, as both *Bennett* and *Sherwood* acknowledge, Tennessee's legislature chose not to include the FTC Act's prohibition on unfair competition or anticompetitive conduct, and "[t]he choice was significant." *Bennett*, 198 S.W.3d at 754 (citing *Sherwood*, 2003 WL 21780975, at *31-32 & n.35).

- **Utah**: EPPs argue that their Utah claim should survive because the statute should be "liberally construed" and contains an FTC Act harmonization provision. But they cannot dispute that courts on this *particular* issue have held that the statute does not reach antitrust claims. *See In re DRAM*, 516 F. Supp. 2d at 1117 (declining to extend the statute's ban on unconscionable acts to include antitrust claims, as doing so would "unnecessarily enlarg[e] the scope" of the statute); *cf. Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) (statute provides no cause of action where the complained-of conduct was governed by other, more specific law) (citing *Carlie v. Morgan*, 922 P.2d 1, 6 (Utah 1996)).

- **West Virginia**: Although the statute identifies "[u]nfair methods of competition" among the types of prohibited conduct, *see* W. Va. Code § 46A-6-104, prohibited conduct must "create[] a likelihood of confusion or of misunderstanding with respect to goods, services or business, or involves deceptive, false, or misleading statements and representations in connection with goods, services and businesses." *In re DRAM*, 516 F. Supp. 2d at 1118. EPPs' claims include no such allegations and should be dismissed. *See, e.g.*, *In re Lidoderm*, 103 F. Supp. 3d at 1173; *In re Flash Memory*, 643 F. Supp. 2d at 1162.

### 3.    Tennessee's Prohibition on Class Actions Applies.

Tennessee's class-action limitation "is so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights." *Bearden v. Honeywell*

16

*Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285, at \*10 (M.D. Tenn. Aug. 16, 2010). It "is contained in the substantive statute itself," and "[t]he very statutory provision that authorizes a private right of action for a violation of the TCPA limits such claims to those brought 'individually.'" *Id.* Thus, the limitation is substantive and applies in federal court, requiring dismissal of EPPs' claim. *Id.*; *see also In re Lipitor*, 2018 WL 4006752, at \*11; *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at \*9 (N.D. Cal. Mar. 12, 2014); *In re DDAVP*, 903 F. Supp. 2d at 229.

**4.      EPPs Fail to Adequately Allege Sufficient Intrastate Connections.**

EPPs' allegations of nationwide price increases do not suffice under the laws of New Hampshire, New York, and North Carolina, which require allegations of *specific* intrastate connections.

- **New Hampshire**: In response to Defendants' authority requiring New Hampshire-centric allegations, EPPs cite a list of cases but provide no basis to disagree with the cases Defendants cite. EPPs' cases erroneously conclude that the statute's requirement of in-state conduct is satisfied by simply selling a product in the state, regardless of whether the conduct actually complained of occurred elsewhere. *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d at 235 (agreeing that "commercial conduct is actionable under [the statute] only if it occurs within New Hampshire" (quotation marks omitted)). EPPs' argument depends on this Court similarly reading this requirement out of the statute.

- **New York**: EPPs contend that that the statute applies to transactions in New York, but that assertion does not speak to whether *deceptive conduct* also must occur there. *See Sheet Metal Workers*, 263 F.R.D. at 214 (dismissing claim because "End-Payor Plaintiffs have made no allegation that any deceptive conduct took place in New York") (collecting cases).

- **North Carolina**: EPPs offer no factual allegations from which the Court could conclude that sales in North Carolina substantially affected that state's commerce, which is required to satisfy North Carolina's consumer protection statute. *See, e.g.*, *Verona v. U.S. Bancorp*, 7:09-CV-057-BR, 2011 WL 1252935, at \*15 (E.D.N.C. Mar. 29, 2011).

**5.      EPPs Are Not "Consumers" and Thus Lack Standing.**

EPPs, as health benefit fund plans, are not "consumers" as required to pursue claims under the consumer protection laws of District of Columbia, Kansas, Maine, Massachusetts, Missouri, Rhode Island, Vermont, and Virginia. It is irrelevant that EPPs' *members* ultimately used Zetia®

17

for personal uses or that the class includes independent purchasers; the statutes grant rights of action to persons or business entities who purchased the good for their *own* personal use, which EPPs—the named plaintiffs—cannot allege they did. *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819 (NG) (LB), 2018 WL 5928143, at *7, 11 (E.D.N.Y. Nov. 13, 2018) (dismissing Missouri and Vermont claims); *In re Lipitor*, 2018 WL 4006752, at *18, 21 (dismissing Maine and Rhode Island claims); *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *9 (D. Conn. Aug. 9, 2016) (rejecting EPPs' exact argument as to Vermont's statute); *In re Solodyn*, 2015 WL 5458570, at *17 (dismissing Kansas claim); *Sheet Metal Workers*, 737 F. Supp. 2d at 423 (dismissing Rhode Island claim).

### 6. EPPs' Failure to Send Pre-Suit Notice Requires Dismissal.

EPPs' Massachusetts and West Virginia claims also should be dismissed:

- **Massachusetts**: EPPs cite an exception applicable where defendants "do[] not maintain a place of business or do[] not keep assets within the commonwealth" Mass. Gen. Laws ch. 93A, § 9(3). (Opp. at 22.) But EPPs have not pleaded the facts necessary to invoke this exception. Though EPPs plead that Defendants are headquartered in New Jersey and India, (Compl. ¶¶ 16-26), those are *not* allegations that Defendants "do[] not maintain a place of business" in Massachusetts. Nor does *Shady Grove* render the notice provision inapplicable in federal court. *In re Lipitor*, 2018 WL 4006752, at *11-13.

- **West Virginia**: Courts routinely dismiss West Virginia consumer protection claims for failure to satisfy the pre-suit notice requirement. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 911 (E.D. Pa. 2012). Citing no authority, EPPs claim that the statute allows for *post-filing* notice, which undercuts the statute's *pre-suit* notice requirement and ignores post-amendment cases holding that failure to provide pre-suit notice of a claim warrants dismissal of the claim. *See Waters v. Electrolux Home Prods., Inc.*, 154 F. Supp. 3d 340, 354 (N.D. W. Va. 2015). Nor does *Shady Grove* render the notice provision inapplicable in federal court. *In re Lipitor*, 2018 WL 4006752, at *11-13.

### 7. EPPs' Claim Under Florida's Statute Does Not Satisfy Rule 9(b).

Many courts apply Rule 9(b)'s particularized pleading standard to claims based on anticompetitive conduct asserted under Florida's consumer protection statute. *E.g.*, *In re Suboxone*, 64 F. Supp. 3d at 700; *In re Packaged Ice*, 779 F. Supp. 2d at 665. EPPs do not allege

how any deception was perpetrated or any particular statement made by Defendants. Because EPPs appear to concede they have not pled this claim with particularity, it should be dismissed.

## D.    EPPs' Claims for Unjust Enrichment Fail.

Like the Complaint, EPPs' Opposition offers only formulaic recitations of the elements a plaintiff must "generally" allege to state an unjust enrichment claim, untethered to specific state laws. (Opp. at 24.) EPPs defend this by asserting that such claims are "materially the same." But that type of conclusory generalization is inadequate and fails "to account for any consequential differences that may exist among the undifferentiated state-law claims." *In re Aggrenox*, 94 F. Supp. 3d at 252, 255-56. "[T]he implication that there are no consequential differences between those laws, is not entitled to deference." *Id.* at 255. EPPs' unjust enrichment claims fail "because 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Additionally, cases allowing plaintiffs to circumvent *Illinois Brick* by premising unjust enrichment claims on antitrust conduct are outliers; the majority of cases forbid such circumvention of state policy decisions. *See, e.g.*, *United Food & Commercial Workers Local 1776*, 74 F. Supp. 3d at 1089 ("joining the majority of courts" in holding that "EPPs cannot circumvent the *Illinois Brick* prohibition absent authority from the courts of those states that would allow unjust enrichment claims to proceed"); *In re Niaspan*, 42 F. Supp. 3d at 762-63 (same). EPPs cite only one case that has addressed the issue and failed to conclude that indirect purchasers cannot circumvent *Illinois Brick* by bringing unjust enrichment claims. The remaining cases cited by EPPs do not address the effect of *Illinois Brick* on unjust enrichment claims. *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2013 WL 2181185, at *25 (E.D. Tenn. May 20, 2013); *King Drug Co. of Florence v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 539 (E.D. Pa. 2010),

*abrogated by In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 669-71 (E.D. Mich. 2000).

Similarly, EPPs' argument that they need not show that they conferred a benefit directly on Defendants ignores the weight of authority dismissing claims because indirect purchasers cannot directly confer a benefit upon the defendant. (*See* Mot. at 28-29.) The cases EPPs cites are distinguishable. *See, e.g.*, *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *28 (N.D. Cal. Aug. 11, 2015) (declining to follow *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012)); *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1088 (N.D. Cal. 2014) ("*Cardizem* is not instructive because did it not cite any Michigan state authority involving indirect purchasers or transactions.").

Finally, EPPs claim they can plead claims in the alternative, but they fail to explain how this principle applies here. EPPs cannot alternatively plead their unjust enrichment claims to sidestep *Illinois Brick*; contrary decisions "are outliers." *In re Opana ER*, 2016 WL 4245516, at *2. Nor can EPPs plead alternatively to cure the pitfall underlying each unjust enrichment claim: EPPs have not actually *pleaded* those claims, but instead merely listed them alongside legal conclusions. EPPs cannot argue something in the alternative that they never pled to begin with.

## II.    CONCLUSION

For the reasons set forth above and in their initial memorandum of law, Defendants respectfully requests that the Court grant their motion to dismiss.

Dated:  November 16, 2018

Respectfully submitted,

| | |
|---|---|
| */s/      Stephen E. Noona* | */s/        J. Kevin Fee* |
| Stephen E. Noona | J. Kevin Fee (Bar. No. 88376) |
| Virginia State Bar No. 25367 | Teri J. Diaz (Bar. No. 87457) |

KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com

Samuel G. Liversidge (*pro hac vice*)
Christopher D. Dusseault (*pro hac vice*)
Michael M. Lee (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7855
Facsimile: (213) 229-6855
Sliversidge@gibsondunn.com
CDusseault@gibsondunn.com
MLee@gibsondunn.com

Veronica S. Lewis (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX 75201-6912
Telephone: (214) 698-3320
Facsimile: (214) 571-2936
vlewis@gibsondunn.com

Eric J. Stock (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-2301
Facsimile: (212) 716-0801
estock@gibsondunn.com

Tarek Ismail (*pro hac vice*)
Jennifer L. Greenblatt (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI BRENNAN &
BAUM LLP
564 West Randolph Street, Suite 400
Chicago, IL 60661
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
tismail@goldmanismail.com
jgreenblatt@goldmanismail.com

MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20005
Tel: 202.739.3000
Fax: 202.739.3001
kevin.fee@morganlewis.com
teri.diaz@morganlewis.com

Steven A. Reed (admitted *pro hac vice*)
R. Brendan Fee (admitted *pro hac vice*)
Zachary M. Johns (admitted *pro hac vice*)
Jessica J. Taticchi (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5000
Fax: 215.963.5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
zachary.johns@morganlewis.com
jessica.taticchi@morganlewis.com

Stacey Anne Mahoney (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Ave.
New York, NY 10178
Tel: 212.309.6000
Fax: 212.309.6001
stacey.mahoney@morganlewis.com

*Counsel for Defendants*
*Glenmark Pharmaceuticals, Ltd. and*
*Glenmark Pharmaceuticals Inc., USA*
*incorrectly identified as Glenmark Generics*
*Inc., USA*

21

*Counsel for Defendants Merck & Co., Inc.,
Merck Sharp & Dohme Corp., Schering-
Plough Corp., Schering Corp., MSP
Singapore Co. LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record who have filed an appearance.

Dated: November 16, 2018

/s/    Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

*Counsel for Defendants Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp. and MSP Singapore Co. LLC*

23